**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190447-U

Order filed November 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-19-0447 |
| v. | ) | Circuit No. 15-CF-506 |
| | ) | |
| STEPHEN L. KING, | ) | Honorable |
| | ) | Kim L. Kelley, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice O'Brien and Justice Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: (1) Sufficient evidence was presented to establish defendant's driving as a proximate cause of the victim's death; and (2) defendant's conviction for aggravated driving under the influence under count II violates the one-act, one-crime doctrine.

¶ 2     Defendant, Stephen L. King, appeals from his convictions for aggravated driving under the influence (DUI) of drugs. Defendant argues that the State failed to present sufficient evidence that defendant's driving was a proximate cause of Ricky Nelson's death. Alternatively, defendant

argues that his multiple convictions for aggravated DUI violate the one-act, one-crime doctrine. We affirm in part and vacate in part.

¶ 3                                    I. BACKGROUND

¶ 4        On April 17, 2015, defendant was involved in a single-car accident that resulted in the death of Nelson. The State filed a two-count indictment on November 19, 2015. Each of the counts alleged that defendant committed DUI in that he operated a motor vehicle "while there was any amount of drug, substance, or compound" in his body "resulting from the unlawful use or consumption of cannabis *** or a controlled substance." See 625 ILCS 5/11-501(a)(6) (West 2014). Both counts charged defendant with aggravated DUI; count I alleged that the accident was the proximate cause of Nelson's death (*id.* § 11-501(d)(1)(F)), while count II alleged that defendant had at least two prior DUI violations (*id.* § 11-501(d)(1)(A)).

¶ 5        In August 2018, defendant gave notice that he would be asserting the affirmative defense of an intervening cause: that a blowout of the right front tire was the sole proximate cause of the accident. On February 22, 2019, the case proceeded to a bench trial on count I. Prior to the start of the trial, defendant entered an open plea of guilty to count II. The State presented the following factual basis.

        "As to Count 2, the State's evidence would be as follows: On April 17, 2015, at approximately 2:25 p.m., Deputy Linton of the Tazewell County Sheriff's Office was dispatched to 5203 Delavan Road to investigate the report of a traffic crash with injuries. Upon arrival Deputy Linton found a silver truck lying upside down in the west side ditch. A white male, later identified as *** the defendant, was being tended to by rescue personnel and admitted he was the one driving the truck. Further investigation showed the truck was driving southbound

2

on Delavan Road when it left the roadway, struck a culvert and went airbound, striking a guy wire and overturning.

There would be testimony that would indicate that there were injuries from the crash that did result in the defendant being taken to OSF St. Francis Hospital, and Deputy Petsas of the Tazewell County Sheriff's Office responded to OSF St. Francis Hospital to talk to the defendant who gave information about the crash. There would be testimony that a blood and urine sample was taken from the defendant and that it did indicate the presence of THC and cocaine metabolites in the defendant's system. I believe priors would be something that the State would need to prove up for purposes of sentencing but not relevant to a factual basis."

¶ 6 After defendant's plea on count II was completed, the bench trial on count I commenced. The parties entered a multi-page stipulation containing the following evidence. Deputy Chuck Linton of the Tazewell County Sheriff's Department would testify that at approximately 2:25 p.m. on April 17, 2015, he was dispatched to the scene of an accident near 5203 Delavan Road. He observed a silver truck, facing west, overturned in the ditch. He spoke with defendant who admitted to being the driver of the truck. While defendant was driving, the right front tire blew out, which caused the truck to enter the ditch, hit the culvert, and overturn. Linton identified a rear passenger who had been ejected from the truck as Joe Woodard and the front seat passenger as Nelson. Nelson demonstrated no signs of life and was removed from the scene by the coroner's office.

¶ 7 Deputy Chris Petsas of the Tazewell County Sheriff's Department would testify that he spoke with defendant at the hospital. He learned that defendant and Woodard had purchased a

3

12-pack of beer before arriving at Nelson's house. Defendant intended to borrow Nelson's truck to move tables. The three men stayed at Nelson's house for approximately 20 minutes before leaving, during which time, defendant drank one beer. Prior to leaving, defendant noticed "the front passenger side tire was in bad shape and had a knot on the sidewall." When defendant drove the truck on Delavan Road the front passenger tire blew out, causing him to lose control of the truck and leave the roadway. Defendant hit a culvert which caused the truck to overturn. Woodard was unrestrained and ejected from the truck. Nelson was caught in his seatbelt, hanging outside of the truck. Defendant noticed Nelson turning blue as he tried to extract him from the seatbelt. Two young men arrived and used a box cutter to free Nelson from the seatbelt. Defendant consensually provided blood and urine samples for testing.

¶ 8        Michelle Harper would testify that she drove up on the crash site. She observed the truck overturned in the ditch, Woodard and defendant outside of the truck, and Nelson inside the truck with his legs hanging out. She helped extract Nelson from the truck. Nelson was alive when they removed him from the truck but died shortly thereafter.

¶ 9        Hunter Moreland would testify that he and a friend observed the crashed truck from his residence on Delavan Road. They went to the scene of the accident to see if they could help. They helped move Woodard out of the roadway then cut the seatbelt that was holding Nelson inside the truck and helped to extract him. Moreland's friend called 911 and they remained on scene until emergency personnel arrived.

¶ 10       Stefanie Clarke would testify that she was a registered nurse working at OSF St. Francis Hospital on the afternoon of the crash. She cared for defendant when he arrived at the hospital. He admitted to her that he was operating the crashed truck. She collected samples of blood and urine from defendant, sealed them, and turned them over to police.

4

¶ 11          Forensic scientist Alexandra Baluka would testify that she analyzed defendant's blood and urine samples. No volatiles were detected in defendant's blood, and she ran no drug testing on defendant's blood. THC and cocaine metabolites were detected in defendant's urine. Another forensic scientist, Cathy Anderson, would testify that she also analyzed defendant's blood and urine. No THC or cocaine metabolites were detected in defendant's blood but were detected in defendant's urine.

¶ 12          Dr. Scott Denton would testify that he conducted an autopsy on Nelson. In his medical opinion, Nelson's cause of death was "multiple blunt injuries of the head, neck, and chest due to a pickup crash."

¶ 13          The court heard live testimony from Captain Gerald Kempf of the Tazewell County Sheriff's Department. Kempf conducted a follow-up interview with defendant, who he identified in open court, on April 20, 2015. At that time, defendant consented to a search of his cell phone. The downloaded information revealed that defendant was not using his cell phone at the time of the crash. Defendant informed Kempf that he and Woodard went to Nelson's house. Defendant consumed one beer, then left the residence to pick up tables in Nelson's truck. Defendant indicated that when he was driving down the road, he could feel the tires wobble. He thought there was some type of defect with the tire. Defendant informed Kempf that when he drove at speeds between 60 and 65 miles per hour, the wobbling became less pronounced. When the tire blew out, the truck left the road. Defendant attempted to correct that but was unable, and the crash occurred. Defendant indicated that he and Nelson had discussed the condition of the tire and he had offered Nelson another set of tires that were in better condition. Defendant admitted to smoking marijuana two to three times each day. He smoked "two bowls or hitter pipes full of cannabis" between noon and 1 p.m. on the day of the crash.

5

¶ 14 Deputy Jason Kedzior of the Tazewell County Sheriff's Department testified that on April 17, 2015, he was a certified accident reconstruction officer. He completed a reconstruction of the accident. Upon arriving, Kedzior observed tire marks on the roadway, three regular and one irregular. Kedzior described the irregular tire mark as very distinct, with a wavy pattern which indicated that the weight was imbalanced. The tire marks started within the lane lines on the roadway then went off the road to the west. The truck struck the north side of the culvert, overturned, and came to a rest on the south side of the culvert. Kedzior observed the front passenger side tire had failed. The failed tire possessed a noticeable defect and "the abnormality or the failure [went] from the outside to the inside of the tire." Photographs of the damage to the tire were admitted into evidence. Kedzior indicated that very rarely do tire failures of that sort necessarily cause crashes. He repeatedly refused to characterize the failure as a blowout, maintaining that "[y]ou have to be careful with that language, with blowout. We don't use that; we use tire failure." Kedzior explained that tire failure is an abnormality of some sort and not attributable to normal wear and tear of the vehicle. He concluded that the cause of the crash was operating the truck on an unsafe pneumatic tire.

¶ 15 At the close of evidence, the court took the matter under advisement. On February 28, 2019, the court returned a guilty verdict. In rendering its decision, the court noted that the only contested element was whether defendant's act of driving while there was any amount of drug in his system was a proximate cause of the death of Nelson. Regarding proximate causation, the court made the following findings.

"So proximate cause, two parts: First part is cause-in-fact; the Court finds as follows: The defendant's driving was a material element and substantial factor in bringing about the crash in Mr. Nelson's death. Driving first and foremost is a

6

choice. An alternative and more prudent choice on that day would have been not to drive, especially when he saw before he got into that truck the tire's condition before he began, even more so when he felt the tire wobble, and he learned that a certain speed he could hit some harmonics on it and get the wobble to even out. So absent Defendant's conduct, the choice to continue driving with a known bad tire, injury would not have occurred ***.

     ***

     *** The second prong of probable cause is the legal cause. Was the crash and injury and resulting death a type that a reasonable person would see as a likely result of his conduct? I respectfully suggest crashes leaving the roadway and death are exactly the type of accident and injury foreseeable by driving a great rate of speed on a bad tire. Reasonably prudent people don't drive on bad tires; they change the tire. Or they limp on a tire to get to a gas station at a very low rate of speed.

     *** [T]he defendant noticed the bulge on the side of the tire before deciding to drive. He noticed the tire was bad. He offers to give Mr. Nelson another set of tires, which to me is clear that it was within his knowledge that this was an unsafe set of tires or bad set of tires. He didn't pull over and change a bad tire after he noticed the initial wobble. He tried to smooth it out by trying to find the speed where he hit the harmonics and evened out the ride. So I cannot say therefore that the bad tire, although it was a catastrophic failure, was wholly unexpected ***. I think you had to show the tire failure being wholly unexpected, a condition unnoticed and totally took him by surprise. ***

7

\*\*\* He foresaw the possibility; he foresaw the bad tire; he felt the wobble but continued to drive. So at a minimum it was negligent, possibly reckless, action of driving on a known bulging tire that wobbled while he's driving, and ultimately that tire gave way, and a catastrophic crash leading in death is a reasonably foreseeable result."

¶ 16    The court sentenced defendant to five years and eight months' imprisonment on count I and three years' imprisonment on count II to run concurrently. Defendant appeals.

¶ 17                                II. ANALYSIS

¶ 18    Defendant argues that the State failed to prove him guilty of aggravated DUI under count I, where it failed to prove that defendant's driving was a proximate cause of Nelson's death. Further, defendant argues that, if his conviction for aggravated DUI under count I is affirmed, his conviction for aggravated DUI under count II violates the one-act, one-crime doctrine where the conviction stems from the same act of DUI.

¶ 19                          A. Sufficiency of the Evidence

¶ 20    In a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. In making this determination, we view the evidence in the light most favorable to the State. *Id.* It is not the function of a reviewing court to retry a defendant who challenges the sufficiency of the evidence. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 21    There are multiple ways for a person to commit DUI in Illinois. Some violations require proof of impairment, whereas others are " 'strict liability' " offenses. *People v. Martin*, 2011 IL 109102, ¶ 26 (quoting *People v. Ziltz*, 98 Ill. 2d 38, 42 (1983)). "[W]hether proof of impairment is necessary to sustain a conviction for aggravated DUI under section 11-501(d)(1)(F) depends upon whether impairment is an element of the underlying misdemeanor DUI." *Id.* Where, as here, the underlying misdemeanor DUI alleges a violation of section 11-501(a)(6), "[a] driver with controlled substances in his body violates section 11-501(a)(6) simply by driving." *Id.* Accordingly, "the State is not required to prove that the marijuana or other drug in the defendant's system (or any impairment caused by such drug) was the proximate cause of the victim's injuries; rather, it must merely prove beyond a reasonable doubt that the defendant's *driving* was a proximate cause of his or her injuries." (Emphasis in original.) *People v. Mumaugh*, 2018 IL App (3d) 140961, ¶ 27.

¶ 22    To sustain a charge of aggravated DUI under count I, the State must prove that defendant: (1) drove a motor vehicle; (2) while there was any amount of THC or cocaine in defendant's body; (3) was involved in a motor vehicle accident; (4) which resulted in the death of Nelson; and (5) his driving with any amount of drug in his body was a proximate cause of the death of Nelson. See 625 ILCS 5/11-501(a)(6), (d)(1)(F) (West 2014). The only element at issue in this case is whether defendant's driving was a proximate cause of Nelson's death.

¶ 23    Proximate causation is comprised of two distinct requirements: cause in fact and legal cause. *People v. Hudson*, 222 Ill. 2d 392, 401 (2006). Cause in fact occurs where there is a reasonable certainty that a defendant's conduct is a material element and a substantial factor in causing the injury. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999). A defendant's conduct constitutes a material element and a substantial factor if, without that

9

conduct, the injury would not have occurred. *Id.* Legal cause involves an assessment of foreseeability. *Mumaugh*, 2018 IL App (3d) 140961, ¶ 28. "The relevant inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.*

¶ 24    Defendant does not dispute that the evidence presented was sufficient to establish cause in fact. We agree. Defendant's physical act of driving constituted a material element and substantial factor in the crash and subsequent fatal injury to Nelson.

¶ 25    Next, we determine legal causation. The relevant question is whether the injury, the death of Nelson in a roll-over crash, is a result that a reasonable person could see as a likely result of defendant's conduct. Here, the evidence indicated that defendant observed that "the front passenger side tire was in bad shape and had a knot on the sidewall" prior to driving Nelson's truck. He offered to give Nelson a better set of tires for his truck. As he drove, he felt the tire wobble. Instead of driving slowly or stopping, he increased his speed to 60 to 65 miles per hour until he felt the wobble decrease. The tire blew out causing defendant to lose control of the truck. It subsequently left the roadway, hit the culvert, and overturned.

¶ 26    Defendant's assessment of the condition of the tire, while relevant to the determination of legal causation, is separate from his physical act of driving. The evidence clearly demonstrates that both defendant and Nelson were aware of the condition of the tire on Nelson's truck. Defendant offered Nelson a better set of tires and, whether Nelson accepted, the tires were not changed before defendant drove the truck that day. Defendant relied, at least in part, on Nelson's opinion of the roadworthiness of his truck where Nelson continued to allow defendant to use the truck that day and rode along with him, even after observing the visible defect and having a conversation about changing the tires. However, Nelson's unsafe decisions regarding the use of his truck do not negate defendant's own actions.

10

¶ 27 Turning to defendant's physical act of driving, the evidence demonstrates that the tire began to wobble while defendant drove. Upon feeling the tire wobble, rather than driving cautiously at a slower speed, or stopping, defendant increased his speed to 60 to 65 miles per hour. Considering what defendant knew about the condition of the tire prior to driving, his decision to increase his speed when faced with the poor condition and performance of the tire was an unreasonable and improper response.

¶ 28 Defendant argues that Kedzior's testimony that it is very rare for a motor vehicle crash to be necessarily caused by this type of tire failure renders it an unforeseeable result of defendant's driving. However, whether the number of motor vehicle crashes caused by tire failure is minimal does not change the fact that when defendant chose to accelerate when a tire, which he knew to be visibly defective, began to wobble, only two options existed. Either the tire would hold, or the tire would fail. Where the tire fails, especially in the face of defendant's decision to increase his speed when he felt the tire wobble, the likely result was a vehicle crash. Injury and death are a reasonably foreseeable result of vehicle crashes, especially when a vehicle leaves the roadway. Accordingly, we conclude that a rational trier of fact could have found Nelson's death to be a reasonably foreseeable result of defendant's actions, and the State proved defendant guilty beyond a reasonable doubt of aggravated DUI under count I.

¶ 29                                         B. One-Act, One-Crime

¶ 30 Defendant argues that his conviction for aggravated DUI under count II violates the one-act, one-crime doctrine. Defendant acknowledges that he forfeited this issue but requests plain error review. The plain error doctrine permits a reviewing court to remedy a forfeited "clear or obvious error" when "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Piatkowski*, 225 Ill. 2d 551, 565

11

(2007). "[I]t is well established that a one-act, one-crime violation affects the integrity of the judicial process, thus satisfying the second prong of the plain-error test." *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009).

¶ 31    Under the one-act, one-crime doctrine, a defendant may not be convicted of multiple offenses arising out of a single physical act. *People v. King*, 66 Ill. 2d 551, 565-66 (1977). Where the same physical act supports multiple convictions, only the most serious conviction can stand. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 32    Here, the State concedes that both of defendant's convictions were based upon the single act of defendant driving a vehicle on Delavan Road in the afternoon of April 17, 2015, while he had THC and cocaine metabolites in his system. We agree. The factual basis presented by the State on count II mirrors the evidence presented at trial on count I which both showed that defendant was driving a silver truck on the afternoon of April 17, 2015, on Delavan Road. A crash occurred in which the truck left the roadway, hit a culvert, and overturned. Defendant's blood and urine were drawn and tested. At the time of the incident, defendant had THC and cocaine metabolites in his system. Consequently, the lesser of defendant's convictions must be vacated.

¶ 33    When determining which conviction is more serious, a reviewing court will compare the potential punishments for each offense. *Id.* Both of defendant's convictions are Class 2 felonies. Generally, a Class 2 felony is punishable by no less than three to seven years' imprisonment. 730 ILCS 5/5-4.5-35(a) (West 2014). Except as otherwise provided in the Code, a sentence of probation may be imposed. *Id.* § 5-4.5-35(d). Aggravated DUI under count II falls within this standard range of sentencing.

¶ 34    Authorized dispositions differ for aggravated DUI under count I. Probation may not be granted to a defendant convicted under this section unless "the court determines that extraordinary circumstances exist and require probation." 625 ILCS 5/11-501(d)(2)(G) (West 2014). Further, the range of imprisonment increases as the number of deaths increase. Here, the violation resulted in the death of one person. Where one person dies, the range of imprisonment is 3 to 14 years' imprisonment. *Id.* Accordingly, defendant's conviction for aggravated DUI under count I carries increased penalties and is the more serious conviction. We therefore vacate defendant's conviction for aggravated DUI under count II.

¶ 35                                III. CONCLUSION

¶ 36    The judgment of the circuit court of Tazewell County is affirmed in part and vacated in part.

¶ 37    Affirmed in part and vacated in part.